UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MICHAEL PHILIP KAUFMAN,<br><br>                              Plaintiff,<br><br>v.<br><br>ZOHO CORPORATION,<br><br>                              Defendant. | Civil Action No. 1:25-cv-1082<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff MICHAEL PHILIP KAUFMAN ("Plaintiff"), as and for his complaint against

the defendant, Zoho Corporation ("Zoho" or "Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement of U.S. Patent No. 7,885,981 (the "'981

patent"), 10,025,801 (the "'801 patent"), and 10,977,220 (the "'220 patent") (collectively, the

"Asserted Patents"). True and accurate copies of the '981, '801, and '220 patents are respectively

attached to this Complaint as Exhibits A, B, and C. The Asserted Patents concern technology for

automatically generating a user interface to work with the data in a relational database and

related systems and methods. Plaintiff alleges herein that, at least during the period July 2019 to

February 2022, Zoho's online data-driven services infringed one or more claims of each of the

Asserted Patents.

**THE PARTIES**

2.      Plaintiff is an individual who resides in New York, New York.

3.     Zoho is a California corporation with its U.S. headquarters and principal place of business being in this District at 4708 Highway 71 East, Del Valle, Texas 78617. *See* https://www.zoho.com/r/austin.html.

4.     Zoho may be served with process through its registered agent for service in Texas, Incorporating Services, Ltd., 3610-2 North Josey, Suite 223, Carrollton, Texas 75007.

## JURISDICTION AND VENUE

**Subject Matter Jurisdiction**

5.     This action arises under 35 U.S.C. § 271 *et seq.,* and the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and 1367.

**Personal Jurisdiction**

6.     This Court has general and specific personal jurisdiction over Zoho by reason of Zoho's regular and established places of business in this District and its continuous and systematic business activities in this State, directly or through intermediaries, which activities give rise to at least a portion of the infringements alleged herein. For example, Zoho has committed acts of infringement in this District, by among other things, making, using, offering for sale, and selling the infringing apparatus, articles, and services identified herein.

**Venue**

7.     Venue is proper in this District under at least 28 U.S.C. § 1400(b), in that Zoho has a regular and established place of business, and has committed acts of infringement, in this District.

## STATEMENT OF FACTS

8.      Unless otherwise specified, the factual assertions set forth herein relate to the facts that existed during the period from the beginning of the limitations period to the expiration date of the last to expire of the Asserted Patents (February 5, 2022) (hereinafter, the "Period").

**The Asserted Patents**

9.      The Asserted Patents are each incorporated herein by reference.

10.     Plaintiff is the first named inventor and is, and from the date of issue to the present has been, the sole assignee of the entire interest of each of the Asserted Patents, and holds the sole and exclusive right to sue for any infringements of the Asserted Patents that occurred at any time during their respective terms, including without limitation the Period.

11.     A substantial portion of data processing involves data kept in the form of relational databases. Relational databases may comprise arbitrarily large and complexly structured collections of data. The relational database paradigm provides extensive flexibility in defining structures of related tabular data, *i.e.*, data arranged in "rows" (records) each comprising one or more "columns" (fields) of data. A column in a first such table ("primary" table) can consist of entries that each link to a corresponding item that identifies a row in a second such table ("foreign" table). Multiple such links (sometimes called "references" or "referential integrity constraints" (because they constrain permissible inputs for the primary table to values appearing in the foreign table)) may be defined. Such database structures may be designed to support and facilitate the types of advanced data operations used throughout business, scientific, and other applications, such as search, retrieval, joining of related data tabulations, and performing data transformation operations consistently across the collection of data in the database.

12.     However, a relational database *per se* provides only the organizational and internal data manipulation aspects of a comprehensive data-driven system. Another necessary aspect for using a relational database involves providing a user interface (UI), to allow users to perform operations to create (enter, add), retrieve (view, search), update (edit), and delete (or hide or suppress the display of) data, sometimes referred to in combination as "CRUD" operations.

13.     Prior to the Asserted Patents, there was a recurring practical problem in implementing data-driven systems with relational databases, in that, in the prior practice, the UI routines had to be written and adjusted by hand, on a per-table basis, to fully reflect the underlying database structure, including cross-table relationships, as well as any changes that might be made to that structure.

14.     The Asserted Patents represented a major advance in technology, by providing an automated process that would first scan the structure of the database, and then, based on what was learned from that scan, and without requiring further human per-table input or adjustment, construct a working user application for working with the relational database, which supported all usual modes of interacting with the database (including CRUD operations), observed and enforced cross-table relationships defined within the database, and preserved the data and referential integrity of the database as changes were made to the data through the generated UI. The Asserted Patents contain claims that cover various aspects of the disclosed UI-related processes.

15.     Plaintiff alleges that Zoho has infringed the Asserted Patents through its provision of data processing services, as set forth in detail herein.

**Zoho's Services**

16.     Zoho sells customer relationship management (CRM) software (introduced in 2005) and related services (the "Services") over the internet, through facilities operated by Zoho and made accessible by it to the public through Zoho's website at the internet address Zoho.com. The Services are widely used throughout the world, including in the U.S. and this District. Zoho users use the Services through various devices, such as desktop computers, tablets, smartphones, and the like, all incorporating computer processors. Such user devices are generally referred to herein, regardless of their specific hardware embodiments or form factors, as "user computers" or "user systems."

17.     Zoho CRM may be accessed at [https://]www[dot]zoho[dot]com/crm/. It provides a customer relationship management (CRM) application with functions such as procurement, inventory, and accounting, at free and various paid subscription levels.

18.     In Zoho CRM, data is categorized into different modules based on similarity of entity attributes. [https://]www[dot]zoho[dot]com/crm/resources/guided-tour/zoho-crm-overview.html?tab-nav=tab-mdul_0. These modules are relational database tables, comprising columns (or **fields**) of specified datatypes which store the attributes for each entity row (or **record**), in tabular form.

## COUNT I
## (DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,885,981)

19.     Plaintiff realleges and incorporates paragraphs 1-18 above by reference.

20.     As more fully alleged in the paragraphs that follow, Zoho directly infringed at least claim 5 of the '981 patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a).

21.    Claim 5 generally concerns computer-readable media containing software for automatically generating an end-user interface for working with the data within a relational database. Zoho's servers include computer-readable media containing software for automatically generating an end-user interface for working with the data within a relational database, as outlined below with respect to the Services, including Zoho CRM.

22.    Zoho CRM allows users to work with CRM data in the form of relational databases. Each relational database comprises a plurality of tables, constraints, and relationships. Zoho CRM refers to its database tables as "modules":



23.    Zoho CRM also supports the creation of custom modules (and has done so since at least 2013):



24.    A Zoho CRM module (table) may contain cross-references to other modules – for example, a Contact may cross-reference to an Account (as represented by the **Account Name** field):



25.    Such inter-table relationships may be created or modified by the included user customization capability:

## Custom Modules or User-Generated Modules

Sometimes, the standard, predefined modules present in Zoho CRM do not always meet your requirements. In such a case, Zoho CRM lets you create a new module depending on your business needs. For instance, Leads, Contacts, and Deals will not be ideal for an educational institution. Students, Teachers and Parents would be more appropriate modules for them and they can create these modules. A hospital can create new modules called Doctors, Patients, and Nurses.

To address these unique business requirements, you can create your own modules. With the Custom Modules functionality in Zoho CRM, you can develop new modules using built-in tools that need no programming skills. These custom modules can seamlessly integrate with core CRM modules and need not be stand-alone modules. What's more, you can:

- Add fields and modify the page layout as per your needs.
- Use roles and profiles to define access controls for the custom modules and its fields.
- Import data to the custom modules with ease.
- Take a backup of your data, anytime.
- Send mass emails to the records in the custom module.
- Create mass email schedulers.
- Use macros to execute a set of actions.
- Create workflow rules to automate your business process.
- Build module relationship by linking custom module records with standard module records.
- Use autoresponders to send automated replies and follow-up emails.

26.     In the Contact module shown above, clicking on a contact's Account Name (such as "King (Sample)" above) will navigate to that account's entry in the Accounts module, further reflecting the cross-referencing functionality of a relational database:



27.     In addition to the foregoing database functionality, Zoho CRM adds the following additional capabilities, which meet all of the limitations of claim 5 of the '981 patent, as outlined in detail below.

28.     "**A computer-readable storage medium containing a set of instructions for a general purpose computer**"—Storage media containing a copy of the software that executes to provide the Zoho CRM functionality alleged herein ("Zoho Recorded Media Software" or "ZRMS") is accessible by Zoho's servers for its CRM services. Zoho makes this media by storing copies of the software for running Zoho CRM on its server-connected storage facilities. Zoho utilizes this media as a master to stream software code to clients, and further to the extent

Zoho's servers themselves execute code therefrom to provide the CRM services. Based on packet inspection and traceroute data, Kaufman asserts that at least some of this making and using of the claimed media by Zoho occurred in the United States. Such infringement arises based on making and using tangible computer-recorded media in the United States. Where the recorded code is executed and by whom are not necessary aspects for such infringement.

29.    **"for automatically generating an end-user interface"**—As shown above, Zoho CRM provides data organized as a relational database, and provides a browser-based end-user interface (UI) for working with this data. As addressed below, Zoho CRM generates the UI for the user's database automatically, based on its determination of the database's internal structure.

30.    **"for working with the data within a relational database … compris[ing] a plurality of tables, constraints and relationships"**—For example, an end-user interface for working with the data within a relational database may be seen in screens such as those shown above, which are representative of a typical CRUD (Create, Retrieve, Update, Delete) UI.

31.    Moreover, as reflected in the illustrations above, the relational database comprises a plurality of tables (for example, **Contact** and **Account** tables, as shown).

32.    The relational databases under Zoho CRM also comprise a plurality of constraints and relationships in accordance with a data model comprising said tables and their column-complements and datatypes, said constraints, and the relationships across said tables. For instance, some of the data in these illustrations may be seen to be constrained by data type (*e.g.*, string, numeric, etc.). Relationships *across* tables are implemented by "foreign key" cross-references, for example, where a contact record includes an "account" field that references a corresponding account row within the Accounts table.

33.    **"wherein said relational database may be of any arbitrary size or complexity"**— The mechanisms that Zoho provides to expand the size or complexity of the user's database do not rely on any preset levels of, or limits on, database size or complexity. (There are some fee-based limitations, but these can be increased by subscribing at a higher level.)

34.    **"said set of instructions comprising: (a) a routine for providing a user interface paradigm"**— It may be seen that such a routine exists within the recorded instructions because the computer that receives and executes those instructions provides such a user interface paradigm. Furthermore, when the user introduces structural changes to the database, the UI adapts correspondingly, without user intervention to adjust the UI or its underlying program code, reflecting that the stored routine is providing (and dynamically updating) the UI paradigm.

35.    **"comprising a set of modes for interacting with a given database table, said modes comprising create, retrieve, update and delete, and a corresponding display format for each mode"**—As shown in the following, the instructions provide CRUD modes for

interacting with the database tables, each such mode having a corresponding display format. *E.g.*,

Create:



Retrieve:



Update:



Delete:



36.     **"(b) a routine for scanning said database and applying a body of rules to determine the table structures, constraints and relationships of said data model, and for storing representations thereof"**— It is reasonable to infer that a routine scans the database and applies a body of rules to determine the table structures, constraints and relationships of said data model, and that it stores representations thereof, since these representations may be seen as rendered by the above displays, and also in view of the user customization capabilities discussed above.

37.     **"(c) a routine for using said representations to construct a corresponding client application, wherein said client application provides a connection to said database"**— The generated client application is responsive to data changes across multiple users and sessions,

reflecting that the representations are used to construct the corresponding client application, and that client application provides a connection to the database for data persistence, as well as data retrieval, creation, deletion, and updating functions.

38.    **"provides displays of the table contents of said database for each of said modes in accordance with the display formats of said paradigm"**—*See, e.g.*, ¶ 35.

39.    **"integrates into each said mode display processes for representing, navigating, and managing said relationships across tables, for selecting among said modes, and for navigating across said tables and interacting in accordance the selected mode with the data in the tables that are reached by said navigation, while observing and enforcing relational interdependencies among data across said tables."**—"Representing": For example, the "retrieve" display shown above represents relationships across tables, indicating the data linkage while representing it as a human-friendly representation (Account **Name**), as opposed to a cryptic raw foreign key cross-reference (e.g., Account **Key** or Account **ID**).

40.    Navigating: For example, as noted above, clicking on a cross-reference field results in navigating to the corresponding foreign-table record:

## Navigate Records

Make use of the page-level and the record-level navigation to easily move to the required record. Page-level navigation allows moving from a particular page to the previous or next consecutive page. Record-level navigation allows moving from one record to the previous or next consecutive record(s).



41.     Managing:



42.     For example, when creating a new Contact, the field for Account provides a pre-populated list of possible selections, based on existing Accounts (with the option to create a new Account in this process, if/as needed). The selections are constrained to the existing Accounts, thereby managing cross-table relationships so as to ensure that "referential integrity" between the Contact and Account tables is maintained at all times.

43.     **selecting among modes, navigating, and interacting while observing and enforcing relational interdependencies**—The user may traverse the data model, and the observed application behavior repeats according to the type of data encountered during the traversal. The generated application thus supports navigating across said tables and interacting in accordance with the selected mode with the data in the tables that are reached by said navigation.

44.     Relational interdependencies among and across tables are consistently observed and enforced during such traversal, as well as during the operations that may be performed at any point reached via such traversal.

45.     Zoho directly infringed the '981 patent under 35 U.S.C. § 271(a) at least as a result of having created numerous tangible recorded copies of the ZRMS on the web and/or Content Distribution Network (CDN) servers under its control in the U.S., from which it may cause users to download the ZRMS to make additional copies thereof on each user's computer; using such copies (*i.e.*, the copies on Zoho's web or CDN servers) to make available a service from which users could download the ZRMS; and selling such access as part of the Service. 28

46.     At all times, Plaintiff complied as to the '981 patent with the marking requirement set forth in 35 U.S.C. § 287(a). During the term of the '981 patent Plaintiff did not make, offer for sale, or sell within the United States or import into the United States any product or service covered by the claims of the '981 patent. Plaintiff never had any licensees under the '981 patent during the term thereof. Therefore, there was nothing made, offered for sale, sold, or imported that required marking of the '981 patent under 35 U.S.C. § 287(a).

47.     Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to compensation for said infringements, in no event less than a reasonable royalty, for the use made of the '981 patent by

Zoho as herein alleged, together with pre- and post-judgment interest and costs as fixed by the Court.

## COUNT II
## (DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,025,801)

48.    Plaintiff realleges and incorporates paragraphs 1-47 above by reference.

49.    As more fully alleged in the paragraphs that follow, Zoho directly infringed at least claim 5 of the '801 patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a).

50.    A significant aspect that makes the techniques of the Asserted Patents much more powerful is their improved representation of inter-table relationships. A primary key for a table row (*e.g.*, Employee_ID within the row data for a specific employee) constitutes a unique identifier for that row. In a fully "normalized" database, in accordance with best practices, that primary key should not have any meaning other than as a unique identifier. Because of its lack of application-domain meaning, the primary key will not be useful within the application other than for uniquely identifying the row in which that primary key appears. A major drawback of this prevalent (and sound) practice is that the primary key will most often be a simple number, that, when referenced from a foreign table, will have no meaning to the user. For example, a "Contacts" table (in this example, a "referencing" table) may have a cross-reference to another table of existing "Languages" entries (the "referenced" table), so as to be able to reflect that a given Contact, "John Doe," uses the English language. The Language in question is uniquely defined by its *own* row in the *separate* Languages table—including its own primary key—and is referenced from the Contacts table by setting the Language *foreign key* value for each row whose contact uses a specified Language to that Language's *primary key* within the Languages table. Note that the primary key in each row of the Languages table will (by best practices) typically be

a *number* (*e.g.*, 0x12d7394 (a hexadecimal number)) or (an otherwise-meaningless)

alphanumeric string. What therefore will be written in such a case into the Contacts table record

for John Doe to indicate his language is the *foreign key value* 0x12d7394, and **not** the name

"English." Thus, if the UI were simply to render the Employee table "as is," the resulting display

would show John Doe's language only as 0x12d7394, which would be sub-optimal because users

would not be expected to know that 0x12d7394 means the Language "English," or that

0x7652301 (for example) means the Language "French." In the case of John Doe, the user would

clearly prefer to see "English" in the display of this data, rather than the cryptic value

0x12d7394. The fact that such UI generation would show only *numbers*—which intentionally

carry no intrinsic meaning—and not human-meaningful information to represent cross-

references was a problem that stood in the way of automatic UI generation for relational

databases.

     51.    The '801 patent claims techniques for generating a UI that solves the above-

described problem by augmenting or supplanting (and then displaying) the referenced foreign

key value in a table *with a description derived from one or more column values in the referenced*

*table row, other than the primary key value*. Beyond teaching such supplementation or

replacement of the numeric cross-reference value, the '801 patent also teaches and claims a

number of approaches for *selecting* appropriate alternate column values in the referenced table

row (other than the foreign key itself) from which to derive this description. These approaches

take advantage of the fact that the referenced table is organized as a relational database table

(such that each primary key in the foreign table will uniquely reference the combination of

descriptive attributes (column values) associated with the entity identified by that primary key),

the fact that descriptive material may be found in nearby columns having, *e.g.*, a "character" or

"text" datatype, and knowledge of how developers often structure such tables, in order to select alternate descriptive data from the foreign table that will be most representative and meaningful to a user. These developments represented a radical improvement in database UI generation at the time invented and patented by Plaintiff. Plaintiff alleges that Zoho infringes the '801 patent's claims to these techniques, throughout the Services.

52.    The preamble of claim 5 of the '801 patent recites:

**5. A non-transitory machine-readable medium, on which there has been recorded machine-readable code for a program executable on a processor, said program comprising routines for displaying, within a user interface operating under control of a processor, an enhanced representation of data from a relational database, the relational database comprising machine-readable data representing a plurality of tables, constraints, and relationships and also operating under control of a processor, wherein the plurality of tables comprises a primary table and a foreign table, wherein each one of the primary table and the foreign table comprises at least one row, and wherein each row comprises a plurality of columns, the routines comprising:**

a "**non-transitory machine-readable medium, on which there has been recorded machine-readable code** [as specified in the remainder of the preamble]" is represented herein by the ZRMS code made, kept and maintained on servers controlled by Zoho. Further, per this preamble, said ZRMS code is executable on a processor and comprises routines for displaying within the UI generated by the ZRMS, an **enhanced representation of data from the user database**, which database is as described in this preamble, as outlined above with respect to Count I, and thus may comprise a primary (referencing) table and a foreign (referenced) table related through a common key value that serves as both a foreign key in the referencing table, and a primary key in the referenced table.

53.    When the first (referencing) user-level table in such a Zoho user database is related to a second (referenced) user-level table thereof through a foreign key, the routines of the ZRMS, in rendering the first user-level table within the UI, automatically supplant the foreign

key for each row in the representation of the first user-level table with a description derived from the data in the related row from the second table, thereby enhancing the representation of the data in the first table by replacing what would have been an unintelligible alphanumeric "pointer" value (without intrinsic meaning) with a more human-friendly description derived from the second table. This functionality may be seen in the following example:

| Contact Name All ▾ | ≡ | Account Name | ≡ | Email | ≡ | Phone | ≡ | Language |
|---|---|---|---|---|---|---|---|---|
| Kris Marrier (Sample) | | King (Sample) | | krismarrier@noemail.invalid | | 555-555-5555 📞 | | |
| Sage Wieser (Sample) | | Truhlar And Truhlar (Sample) | | sage-wieser@noemail.invalid | | 555-555-5555 📞 | | |
| Leota Dilliard (Sample) | | Commercial Press (Sample) | | leota-dilliard@noemail.invalid | | 555-555-5555 📞 | | |
| Mitsue Tollner (Sample) | | Morlong Associates (Sample) | | tollner-morlong@noemail.invalid | | 555-555-5555 📞 | | |
| Simon Morasca (Sample) | | Chapman (Sample) | | simonm@noemail.invalid | | 555-555-5555 📞 | | |
| Donette Foller (Sample) | | Printing Dimensions (Sample) | | foller-donette@noemail.invalid | | 555-555-5555 📞 | | |
| Capla Paprocki (Sample) | | Feltz Printing Service (Sample) | | capla-paprocki@noemail.invalid | | 555-555-5555 📞 | | English |
| James Venere (Sample) | | Chemel (Sample) | | ljames-venere@noemail.invalid | | 555-555-5555 📞 | | |
| Josephine Darakjy (Sample) | | Chanay (Sample) | | joesphine-darakjy@noemail.invalid | | 555-555-5555 📞 | | French |
| John Butt (Sample) | | Benton (Sample) | | john-buttbenton@noemail.invalid | | 555-555-5555 📞 | | |

The above example shows a Contacts table, displaying rows of a first table (Contacts) that reference rows from a foreign table (Language). Zoho's ZRMS constructs this representation of data for a row (or multiple rows, as shown) of the Contacts table automatically, via machine-generation ("**a routine to automatically construct a representation of data from a row of the primary table (primary-table row)**"). The actual value stored within the Language (FK) column for each record in the Contacts table is an alphanumerical record ID representing a primary key (PK) in the Language table. The ZRMS routines identify this foreign key ("**a routine to identify a foreign key (FK) value in an FK column in the primary-table row, wherein the FK column references the foreign table**"), and locate the corresponding foreign table row ("**a routine to locate a row in the foreign table (foreign-table row) whose primary key (PK) value matches the identified FK value**"). The ZRMS code also "**select[s] a value from the foreign-table row other than the PK value**." This is the actual value displayed above

in the "Language" field, where "English" is shown for the first displayed row and "French" is shown for the second displayed row. These string values, "English" and "French," are the selected values from the corresponding rows of the Language table.

54. The ZRMS routines further derive the data and description for use in the display of foreign table references within primary user-level tables within the Zoho UI, by at least one of the mechanisms specified in at least claim 5 of the '801 patent, *i.e.*, based on at least one of "**column name**," "**column position**," etc., of "**the column in the foreign table that contains the selected value**," as enumerated in claim 5, use the result to supplant the FK value with the derived description in constructing the representation, and display the representation so constructed in the generated UI.

55. Zoho directly infringed the '801 patent under 35 U.S.C. § 271(a) at least as a result of having created numerous tangible recorded copies of the ZRMS on the web and/or CDN servers under its control in the U.S., from which it may cause users to download the ZRMS to make additional copies thereof on each user's computer; using such copies (*i.e.*, the copies on Zoho's web or CDN servers) to make available a service from which users could download the ZRMS, and selling such access as part of the Service. Even in the alternative case (as addressed in paragraph 28) that a complete package for performing all claimed routines may not have been downloaded to users via the ZRMS, the software for performing all the routines nevertheless existed on media that was made and used by Zoho, thus also constituting direct infringement.

56. At all times, Plaintiff complied as to the '801 patent with the marking requirement set forth in 35 U.S.C. § 287(a). During the term of the '801 patent, Plaintiff did not make, offer for sale, or sell within the United States or import into the United States any product or service covered by the claims of the '801 patent. Plaintiff never had any licensees under the '801 patent

- 24 -

during the term thereof. Therefore, there was nothing made, offered for sale, sold, or imported, that required marking of the '801 patent under 35 U.S.C. § 287(a).

57.    Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to compensation for said infringements, in no event less than a reasonable royalty, for the use made of the '801 patent by Zoho as herein alleged, together with pre- and post-judgment interest and costs as fixed by the court.

<u>**COUNT III**</u>
<u>**(DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,977,220)**</u>

58.    Plaintiff realleges and incorporates paragraphs 1-57 above by reference.

59.    As more fully alleged in the paragraphs that follow, Zoho directly infringed at least claim 14 of the '220 patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a).

60.    The claim 14 preamble states:

**14. A non-transitory computer-readable storage medium containing a set of instructions for a general purpose computer, for automatically generating a user interface for working with the data within a relational database, wherein the database is described by a data model comprising a plurality of tables, constraints, and relationships, said set of instructions comprising:**

Each and every tangible copy of the programs and files comprising the ZRMS constitutes "**[a] non-transitory computer-readable storage medium containing a set of instructions for a general purpose computer**." As further set forth herein, the instructions recorded in these media operate "**for automatically generating an end-user interface for working with the data within a relational database**" as recited in claim 14 of the '220 patent.

61.    As described in paragraphs 22-27 above, the relational database with which the UI provided by ZRMS works "**is described by a data model comprising a plurality of tables, constraints and relationships**."

- 25 -

62.     The "**set of instructions**" provided by the ZRMS comprise a plurality of routines that meet the limitations of claim 14, literally, and/or under the doctrine of equivalents, as set forth below.

63.     Limitation "(a)" of said claim recites:

**(a) a routine for scanning the database to determine the tables, constraints, and relationships of the data model**

64.     The instructions of the ZRMS provide a routine for scanning the user's database to determine the table structures, constraints, and relationships of its data model. While this routine is internal to the operations of the ZRMS, Plaintiff alleges that it is reasonable to assert that this routine must exist because the various Zoho systems all allow the users to alter the table structures, constraints and relationships, and the Zoho UI is observed to dynamically adapt to such changes. For example, in a user-level database having Contacts and Language tables, a user can add a (for Language) to the Contacts table, such that each Contact can be assigned a Language, as shown above in the example "retrieve" display. As illustrated, the Zoho applications automatically render updated displays after this new column is added, reflecting that the applications re-scan the user database prior to re-rendering the user display screens, thus evidencing performance of this claim routine.

65.     Limitation "(b)" of said claim recites:

**(b) a routine for creating machine representations of the tables, constraints, and relationships**

66.     The ZRMS creates machine representations of the tables, constraints, and relationships that are scanned in routine (a), above. While this routine is internal to the ZRMS, Plaintiff alleges that it is reasonable to assert that this routine is present because the ZRMS allows the user to alter the table structures, constraints and relationships and the Zoho UI is observed to dynamically adapt to such changes, which Plaintiff believes would be implemented

with the least complexity by creating machine representations of the tables, constraints, and

relationships.

67.    Limitation "(c)" of said claim initially recites:

**(c) a routine for constructing from the representations a corresponding client application**

68.    The ZRMS uses the representations from routine (b) to construct a client

application corresponding to the database structure. This may be seen, for example, where

screens of a user-modified database are rendered.

69.    Limitation "(c)" further recites:

**[the client application] provides:**

**(i) a connection to the database**

The client application from limitation (c) provides a connection to the database. This may be

seen, for example, where changes to data through user interaction persist across repeated

accesses.

**(ii) displays for creating, retrieving, updating, and deleting data within one or more of the tables**

These displays are provided by the ZRMS as set forth in paragraph 63, routine (a) above.

**(iii) mechanisms for representing, managing, and navigating the relationships between data records across related tables**

These mechanisms are provided by the ZRMS as set forth in paragraph 67, routine (c), above.

**wherein constructing the corresponding client application does not require any incremental human intervention on a per table basis.**

By observation, nothing in the construction of the corresponding client application requires

human intervention on a per-table basis. The construction is done by the ZRMS regardless of the

number of tables.

70.     Zoho directly infringed the '220 patent under 35 U.S.C. § 271(a) at least as a result of having created numerous tangible recorded copies of the ZRMS on the web and/or CDN servers under its control in the U.S., from which it may cause users to download the ZRMS to make additional copies thereof on each user's computer; using such copies (*i.e.*, the copies on Zoho's web or CDN servers) to make available a service from which users could download the ZRMS; and selling such access as part of the Service. 28

71.     At all times, Plaintiff complied as to the '220 patent with the marking requirement set forth in 35 U.S.C. § 287(a). During the term of the '220 patent, Plaintiff did not make, offer for sale, or sell within the United States or import into the United States any product or service covered by the claims of the '220 patent. Plaintiff had no licensees under the '220 patent until July 7, 2021, when Plaintiff licensed Salesforce.com Inc. ("Salesforce") under the '220 patent (its only licensee thereunder), under terms designated as confidential. Plaintiff does not believe that from July 7, 2021 to the end of the term of the '220 patent (February 5, 2022) Salesforce made, sold, offered for sale, or imported any patented articles under the '220 patent, in that, to the best of Plaintiff's knowledge, Salesforce's business relative to the subject matter of the '220 patent was to provide "software as a service," which entailed performing methods to provide a service over the internet, and not the sale of patented articles. Therefore, there were no articles made, sold, offered for sale, or imported, that required marking of the '220 patent under 35 U.S.C. § 287(a).

72.     Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to compensation for said infringements, in no event less than a reasonable royalty, for the use made of the '220 patent by Zoho as herein alleged, together with pre- and post-judgment interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter judgment against Zoho as follows:

(A) that Zoho has infringed the Asserted Patents;

(B) awarding Plaintiff its damages suffered as a result of Zoho's infringement of the Asserted Patents pursuant to 35 U.S.C. § 284;

(C) awarding Plaintiff its costs, attorneys' fees, expenses, and interest (including without limitation pre-judgment interest); and

(D) granting Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable pursuant to Federal Rule of

Civil Procedure 38.

Dated: July 11, 2025

/s *Wasif H. Qureshi*
Wasif H. Qureshi
wqureshi@jw.com
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, Texas  77010
Telephone: (713) 752-4521

Ronald Abramson*
ron.abramson@listonabramson.com
David G. Liston
david.liston@listonabramson.com
Ari J. Jaffess*
ari.jaffess@listonabramson.com
Alex G. Patchen*
alex.patchen@listonabramson.com
M. Michael Lewis*
michael.lewis@listonabramson.com
Gina K. Kim
Gina.Kim@listonabramson.com
**LISTON ABRAMSON LLP**
The Chrysler Building
405 Lexington Avenue, 46th Floor
New York, NY 10174
(212) 257-1630
docket@listonabramson.com

* *pro hac vice* application to be submitted

**COUNSEL FOR PLAINTIFF MICHAEL PHILIP KAUFMAN**