# Exhibit A

OIPE
MAR 1 4 2005
PATENT & TRADEMARK OFFICE

2172

CERTIFICATE OF MAILING:
Express Mailing No. ET963475489US
I hereby certify that this correspondence is being deposited with the United States Postal Service as express mail in an envelope addressed to Mail Stop Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450, on Mar. 14, 2005.

| Date | Douglas Zhang<br>Name (print) | Signature |
|---|---|---|

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re App. of: | Kaufman, et al. | Examiner: Alam, Sahid Al |
| Title: | System and Method for Generating Automatic User Interface for Arbitrarily Complex or Large Databases | Serial No.: 10/428,209 |
| Filed: | 04/30/2003 | Art Unit: 2172 |
| Ref. No.: | 13211.0001 | |

## RESPONSE TO OFFICE ACTION

To: Mail Stop Amendment
Assistant Commissioner for Patents
P.O. Box 1450
Arlington, VA 22313-1450

Sir:

This submission is in response to the Office Action mailed September 13, 2004.

The amendment to the abstract is on page 2.

The amendment to the claims is on page 3.

The Applicant's remarks begin on page 11.

Applicant, a small entity, requests a three-month extension to respond. The fee for this extension is included herewith. The Commissioner is authorized to draw on the undersigned's deposit account, no. 08-3264, to rectify any shortage or apply any excess in the payment of said fee.

03/17/2005 EABUBAK1 00000118 10428209
01 FC:2253 510.00 OP

## AMENDMENT TO ABSTRACT

Please replace the abstract with the following:

A software system automatically and dynamically generates a fully functional user interface (UI) based upon, and connected directly to, an underlying data model (as instantiated within a relational database management system (RDBMS)). The UI ~~is built according to~~derives from an automated interrogation of the RDBMS,~~either as needed (on-the-fly) or by building an in-memory representation of the data model. The generated UI~~and comprises all mode displays (e.g., browse, search, edit, add) for all tables, and a full complement of mechanisms – integrated directly into the mode displays – for representing, navigating, and managing relationships across~~tables. This embodiment has the capability of creating such a UI where~~tables, regardless of the complexity of the underlying RDBMS ~~schema is complex and comprises a plurality of tables, constraints, and relationships.~~schema. It utilizes a hierarchical "context stack" for ~~maintaining (and suspending)~~suspending the working state of a particular table~~(comprising selected record, display "mode", and filter constraints imposed from above stack contexts)~~ while "drilling down"~~across relationships~~ to work with related-table information ~~(in a possibly constrained working context) and returning~~and return relevant changes to the ~~parent-context table, and a corresponding UI convention for displaying and navigating this stack.~~base table. The embodiment further provides ~~a set of rules for traversing/ navigating the context stack, and naming conventions and annotational methods for enhancing and extending the~~methods to enhance and extend the internal representation of table structures, constraints, relationships, and~~non-standard or~~special requirements ("business rules") ~~so as to more fully support~~for improved revelation of the schema structure through external interrogation.

## AMENDMENT TO CLAIMS

1. (previously amended) A method for automatically generating an end-user interface for working with the data within a relational database, wherein said relational database comprises a plurality of tables, constraints and relationships, comprising:

    (a) interrogating said database, and extracting therefrom information specifying its table structures, constraints and relationships; and

    (b) using said information to present a corresponding client application;

    and wherein said relational database may be any arbitrary relational database, and said method is effective regardless of the size or complexity of said database.

2. (original) The method of claim 1, wherein said client application provides support for enduser data-modification and -manipulation transactions, comprising creating, revising, removing, and selecting among data records.

3. (original) The method of claim 1, wherein said client application further reveals and enforces non-relational constraints defined within the database for each individual table-column.

4. (original) The method of claim 1, wherein said client application further reveals and enforces relational interdependencies (as embodied in referential-integrity constraints within the underlying database) across data tables.

5. (original) The method of claim 1, wherein said client application deduces relational interdependencies, absent explicit back-end referential-integrity constraints, by comparing field names and associated attributes.

6. (previously amended) A method for providing an automatically generated end user interface for working with the data within a relational database, said relational database comprising a plurality of tables, constraints and relationships, said method comprising utilizing a hierarchical context stack for maintaining the

working state of a particular (or primary) table while drilling-down across relationships to work with related information in a subordinate table, wherein said relational database may be any arbitrary relational database, and said method is effective regardless of the size or complexity of said database.

7. (original) The method of claim 6, wherein said hierarchical context stack further imposes (as necessary) a constraining working context on the subordinate (drilled-to) table, so as to reveal and enforce any relational interdependency (referential-integrity constraint) between the primary and subordinate tables.

8. (original) The method of claim 6, wherein said hierarchical context stack can return relevant changes to the primary table, thereby updating the primary-table record according to data-entry or -modification undertaken in the subordinate-table context.

9. (original) The method of claim 6, wherein said hierarchical context stack is exposed through the user interface, and allows random access to any pending (suspended) stack-context, with abandonment of all subordinate stack-contexts.

10. (original) The method of claim 6, wherein said hierarchical context stack is exposed through the user interface, and allows the restoration of any current screen display to its initial state, thereby abandoning any subsequent but not-yet-committed changes or data-entry by the user.

11. (original) The method of claim 6, wherein said hierarchical context stack is exposed through the user interface, and allows rollback recovery from a system exception, to any pending (suspended) stack context, with abandonment of all subordinate stack-contexts.

12. (previously amended) A method for providing an end-user interface for working with the data within a relational database, said relational database comprising a plurality of tables, constraints and relationships, wherein said user interface conforms to a generalized and comprehensive paradigm, and wherein said

relational database may be any arbitrary relational database, and said method is effective regardless of the size or complexity of said database.

13. (original) The method of claim 12, wherein said paradigm comprises:

(a) a set of modes for interacting with the data in any given database table, and a corresponding display format for each mode; and

(b) a set of rules and methods for moving among said modes.

14. (original) The method of claim 12, wherein said paradigm comprises:

(a) a set of relationship types between individual database tables, and a corresponding user-interface convention for representing each type of relationship within the various display formats; and

(b) a set of rules and methods for managing and navigating across such relationships.

15. (original) The method of claim 12, wherein said paradigm comprises the sets of modes and rules of claim 13, and the sets of relationships and rules of claim 14.

16. (original) The method of claim 12, further comprising revealing and enforcing non-relational constraints defined within the database for each individual table-column.

17. (original) The method of claim 12, further comprising revealing and enforcing relational interdependencies (referential-integrity constraints) across data tables.

18. (original) The method of claim 12, further comprising utilizing a hierarchical context stack to maintain the working state of particular tables while navigating across data relationships to other tables, and a set of rules and methods for traversing said hierarchical context stack.

19. (original) The method of claim 12, further comprising providing integrated security mechanisms to mediate end-user access by function (browse, edit, add, delete) and scope (global-, table-, row-, and column-level).

20. (original) The method of claim 12, further comprising providing integrated help mechanisms to allow display (and dynamic specification) of descriptive pop-up texts for navigational screen elements and for datafields.

21. (original) The method of claim 12, further comprising providing a structured framework for general, special-case, and user-defined exception handling.

22. (original) The method of claim 12, further comprising providing a set of mechanisms, rules, and methods through which each end-user can evolve and manage personalizations to said paradigm with persistent back-end storage and tracking by user and/or group.

23. (original) The method of claim 12, further comprising providing configurable support for a range of (alternative) record-editing concurrency-control behaviors.

24. (original) The method of claim 12, further comprising journaling and auditing of data-modification activity so as to allow reconstruction of user-action and data-state history.

25. (original) The method of claim 24, further comprising requiring end-users to provide justification for changes to certain datafields (with transaction abandonment without said justification, and logging-to-journal of provided justifications).

26. (original) A method for automatically constructing a representation of any database table, which resolves all cross-table relationships so as to supplant internal key fields in the primary table with corresponding descriptive fields derived from the related tables.

27. (original) The method of claim 26, further comprising rendering said representation in the native language of the underlying relational-database engine, wherein it subsequently can be executed on demand.

28. (original) The method of claim 26, further comprising utilizing formal data-structure rules and naming conventions in analyzing the related tables to automatically determine a default construction for each descriptive related-column field.

29. (original) The method of claim 26, further comprising allowing for explicit specification of rendering instructions for individual related-column fields, as (ancillary) sub-representations, and for merging said ancillary representations into the primary representation.

30. (original) The method of claim 29, wherein said explicit specification can override the default construction determined in accordance with claim 28.

31. (original) The method of claim 29, further comprising scoping or explicit rendering specifications, so as to enable both database-wide (global) and primary-table-specific (local) specifications.

32. (currently amended) ~~A~~ The method of claim 26, further comprising ~~for~~ automatically modifying ~~the~~ said representation ~~of any database table,~~ so as to introduce additional row-level filtering logic based on a specified relation between the underlying-table data and the end-user identity, and without otherwise altering said representation or affecting any interdependent software functions.

33. (original) The method of claim 32, further comprising rendering said representation in the native language of the underlying relational-database engine, wherein it subsequently can be executed on demand.

34. (previously amended) A method for providing an automatically generated end-user interface for working with the data within a relational database, said

relational database comprising a plurality of tables, constraints and relationships, said method comprising enhancing and extending the representation of the table structures and relationships so as to further support revelation of the schema structure through external interrogation, wherein said relational database may be any arbitrary relational database, and said method is effective regardless of the size or complexity of said database.

35. (original) The method of claim 34, further comprising using naming conventions.

36. (original) The method of claim 34, further comprising using annotational methods.

37. (original) The method of claim 36, further comprising storing said annotations within the database itself, or within ancillary storage.

38. (previously amended) A method for providing an automatically generated end user interface for working with the data within a relational database, said relational database comprising a plurality of tables, constraints and relationships, said method comprising extending, customizing, adapting, or overriding the baseline UI paradigm provided by said method to support special requirements, wherein said relational database may be any arbitrary relational database, and said method is effective regardless of the size or complexity of said database.

39. (original) The method of claim 38, further comprising using annotational methods.

40. (original) The method of claim 38, further comprising storing said annotations within the database itself, or within ancillary storage.

41. (original) A computer-readable medium containing program instructions for carrying out the method of any of claims 1, 6, 12, 26, 32, 34 and 38.

42. (currently amended) A system for automatically generating an end user interface for working with the data within a relational database, wherein said relational

database comprises a plurality of tables, constraints and relationships, said system comprising:

(a) means for interrogating said database, and extracting therefrom information specifying its table structures, constraints and relationships; and

(b) means for using said information to ~~construct~~ present a corresponding client application;

and wherein said relational database may be any arbitrary relational database, and said system is effective regardless of the size or complexity of said database.

43. (original) The system of claim 42, wherein said system is integrated with an RDBMS.

44. (previously amended) A system for providing an automatically generated end user interface for working with the data within a relational database, said relational database comprising a plurality of tables, constraints and relationships, said system comprising means for utilizing a hierarchical context stack for maintaining the working state of a particular (or primary) table while drilling-down across relationships to work with related information in a subordinate table, wherein said relational database may be any arbitrary relational database, and said method is effective regardless of the size or complexity of said database.

45. (previously amended) A system for providing an end-user interface for working with the data within a relational database, said relational database comprising a plurality of tables, constraints and relationships, wherein said user interface conforms to a generalized and comprehensive paradigm, and wherein said relational database may be any arbitrary relational database, and said method is effective regardless of the size or complexity of said database.

46. (original) The system of claim 45, wherein said system is integrated with an RDBMS.

47. (original) A system for automatically constructing a representation of any database table, which resolves all cross-table relationships so as to supplant internal key fields in the primary table with corresponding descriptive fields derived from the related tables.

48. (currently amended) ~~A~~ The system of claim 47, wherein said system ~~for~~ automatically modifies ~~ying the~~ said representation ~~of any database table,~~ so as to introduce additional row-level filtering logic based on a specified relation between the underlying-table data and the end-user identity, and without otherwise altering said representation or affecting any interdependent software functions.

49. (previously amended) A system for providing an automatically generated end-user interface for working with the data within a relational database, said relational database comprising a plurality of tables, constraints and relationships, said system comprising means for enhancing and extending the representation of the table structures and relationships so as to further support revelation of the schema structure through external interrogation, wherein said relational database may be any arbitrary relational database, and said method is effective regardless of the size or complexity of said database.

50. (previously amended) A system for providing an automatically generated end-user interface for working with the data within a relational database, said relational database comprising a plurality of tables, constraints and relationships, said system comprising means for extending, customizing, adapting, or overriding the baseline UI paradigm provided by said method to support special requirements, wherein said relational database may be any arbitrary relational database, and said method is effective regardless of the size or complexity of said database.

## REMARKS

Applicant thanks the Examiner for his thoughtful review of the application.

Claims 1-50 are in the application. In the action, the Examiner objected to claim 2, objected to the abstract, rejected claims 1-31, 34-47 and 49-50 under 35 U.S.C. § 102 (b) as anticipated by Hecht, U.S. Pat. No. 5,778,375 ("Hecht"), and rejected claims 32, 33 and 48 under 35 U.S.C. § 103 (a) as obvious over Hecht in view of Lei, et al., U.S. Pat. No. 6,487,552 ("Lei").

Applicant submits herewith a revised abstract having fewer than 150 words.

Applicant has amended claims 32, 42 and 48 as attached.

Applicant respectfully traverses the remaining claim rejections and objection.

The present invention addresses the problem of automatically generating an end-user interface for a given relational database comprising a plurality of tables, constraints and relationships. Hecht concerns revising the schema of a database so as to organize it more efficiently. Hecht does not concern itself with how the end-user interfaces with the database.

As the Examiner may be aware, "normalization" is a process for improving the efficiency of storage of information in a database. Often, data will be initially input into a database in one large table, which contains substantial redundant data and for that reason can be inefficient, difficult to maintain, and error-prone. "Normalization" is a process which, among other improvements, involves identifying redundant data and breaking that data out into one or more separate tables. This provides the benefit of having the redundant data represented only once in its own new table, eliminating all the duplicative information from the original table, and replacing it in each case with a very small reference to the appropriate item in a new table. This process, if properly applied, can reduce storage requirements, increase speed of access, and reduce opportunities for data corruption.

Conventionally, normalization is carried out manually. The invention disclosed by Hecht is a method for carrying out normalization in an automated manner, based upon a statistical and heuristic analysis that identifies redundant data. The result of applying the method in Hecht is to automatically propose and carry out a splitting of the subject table into a plurality of more efficiently organized tables. Hecht teaches optionally

presenting this "split" as a recommendation for review by the user, before carrying out the recommended normalization.

Accordingly, therefore, it should be apparent that Hecht, which concerns ***reorganizing*** the internal structure of a database, addresses an entirely different problem than that addressed by the present invention, which involves a system for giving a user access, through a user interface, to the data contained within an arbitrary ***existing*** database structure. Hecht does not anticipate or obviate any of the claims of the present application.

**Rejection of Claim 1**

With regard to claim 1, Hecht does not teach the step of extracting from the database "information specifying its . . . relationships" and "using said information to present a corresponding client application."

The term "relationship" is commonly understood in the field of the present invention as referring to a relationship "across tables" in a database. The term "relationship" is defined in that manner in the present specification. Specification, Page 3, line 24. Moreover, the term "relationship" is defined in exactly the same way in Hecht:

> "A relationship, also referred to as a relation or join, between any two record sources in a relational database is either a direct relationship or an indirect relationship. A direct relationship exists between a first record source and a second record source if there is no intervening record source in the relationship path therebetween. An indirect relationship exists between a first record source and a second record source if there is at least one intervening record source in the relationship path therebetween."

Hecht, col. 1, lines 38-46.

Hecht teaches interrogating a ***single table*** (referred to by Hecht more generically as a "record source") in a database to extract therefrom information about the data in that table, and then to analyze that data in order to suggest how that table can be split into a plurality of tables:

> "The system comprises a method and apparatus for evaluating the data from ***a*** record source in the database and for suggesting to a user of the database a relational split of ***the*** record source."

Hecht, col. 2, lines 28-32 (emphasis added). Thus, Hecht examines the original table and extracts from that table information that it analyzes in order to reorganize the original table into a plurality of tables. In so doing, Hecht also ***creates*** "key relationships" among the newly-separated tables (see, for example, Fig. 14, refs. 1410 & 1411). However, Hecht's process of ***creating new*** relationships is not the same as the present invention, which involves ***extracting already existing*** relationships from the database.

Moreover, Hecht contains no disclosure whatsoever about how to "present" a "client application" – and certainly no disclosure that involves "using" the previously extracted information about "relationships" (i.e., relationships "across tables") to "present" such an application.

Accordingly, Hecht does not anticipate claim 1.

**Rejection of Claims 2-5**

The foregoing arguments with respect to claim 1 apply with equal force to claims 2-5, as those claims are dependent from claim 1 and accordingly incorporate each and every limitation of claim 1, and consequently must be patentable if claim 1 is patentable. MPEP 608.01(n).

**Rejection of Claim 6**

Hecht does not disclose a "hierarchical context stack" or any comparable structure to maintain the working state of a table while drilling-down across relationships. As discussed above, Hecht involves splitting tables and creating relationships between the resulting tables that were not theretofore defined in the database. "Drilling-down" implies traversing existing relationships across tables within a database so as to navigate the database structure, and Hecht does not teach this. Similarly, maintenance of the "working state" for a table is only meaningful where an end-user is able to search, browse, and/or manipulate the data within said table – none of which, again, is taught by Hecht. In fact, Hecht does not even address the traversal of tables joined by its own newly created relationships, let alone the ability to jump back to an earlier traversed

navigational level by retrieving context information from a stack. Applicant has carefully reviewed the Examiner's references in this regard to col. 2, lines 28-37 and col. 5, lines 27-36 of Hecht and believes that the Examiner has misread the disclosures in those lines. Those lines describe a table normalization process and a sampling technique to use in connection with that process. They have nothing to do with traversing a set of table relationships, which is what is addressed by claim 6, nor do they teach or suggest a solution to that problem such as the "hierarchical context stack" recited in claim 6. Nothing in the cited lines or elsewhere in Hecht teaches or suggests a hierarchical context stack as recited in claim 6.

**Rejection of Claims 7-11**

The foregoing arguments with respect to claim 6 apply with equal force to claims 7-11, as those claims are dependent from claim 6 and accordingly incorporate each and every limitation of claim 6, and consequently must be patentable if claim 6 is patentable. MPEP 608.01(n).

**Rejection of Claim 42**

Claim 42 is an apparatus (system) claim that corresponds to the method claim of claim 1. The Examiner will note that claim 42 is presently being amended. The present amendment, which changes the word "construct" to —present—, is being done solely to conform claim 42 with the same change that had previously been made to claim 1 by way of preliminary amendment (and which had been left out of claim 42 solely as a result of an oversight). The present amendment does not narrow the scope of claim 42.

Claim 42 as presently amended contains in "means" form the exact same limitations discussed above in connection with claim 1, with regard to extracting "relationships" from the database and using "said information" to present a corresponding client application. As discussed above, these limitations are not taught by Hecht. Accordingly, for the same reasons discussed with respect to claim 1, claim 42 is patentable over Hecht.

**Rejection of Claim 44**

Claim 44 is an apparatus (system) claim that contains in "means" form the limitations similar to those discussed above with regard to the "hierarchical context stack" of claim 6. As discussed above, Hecht does not disclose a "hierarchical context

stack" or any comparable structure to maintain the working state of a table while drilling-down across relationships. Accordingly, for the same reasons discussed with respect to claim 6, claim 44 is patentable over Hecht.

**Rejection of Claims 12-31, 34-47 and 49-50**

35 C.F.R. §1.104(c)(2) requires that, in rejecting claims, "the pertinence of each reference, if not apparent, must be clearly explained and each rejected claim specified." MPEP 707.07(d) further provides: "A plurality of claims should never be grouped together in a common rejection, unless that rejection is equally applicable to all claims in the group." In the present Action, the Examiner rejected all of claims 12-31, 34-47 and 49-50 in a single sentence, based on the analysis given with regard to claims 1-11. However, claims 12-31, 34-47 and 49-50 do not depend from, or otherwise correspond to, any of claims 1-11. Therefore, the Examiner has not in fact given any basis at all for rejecting any of these claims. Applicant submits in this regard that it believes that neither of the references cited by Examiner in the present Action, nor any other references known to Applicant, provide any basis for rejecting claims 12-31, 34-47 and 49-50 (Applicant makes this argument with respect to claims 34-47 without limiting its remarks with respect to claims 42 and 44, above). Absent any basis for rejection of said claims (and Applicant is aware of none), the claims should be allowed. MPEP 706.

**Rejection of Claims 32, 33 and 48**

Applicant submits that the rejection of claims 32, 33 and 48 based on Hecht in view of Lei is moot, in light of the amendments presently being made to claims 32 and 48.

Claim 32 has presently been amended so as to be dependent from claim 26, and claim 48 has been presently amended so as to be dependent from claim 47. Claim 48 is an apparatus (system) claim which contains in "means" form limitations corresponding to those of claim 32; claim 47 is an apparatus (system) claim which in turn contains in "means" form limitations corresponding to claim 26. Claim 33, as before, depends from claim 32.

As explained above, the Examiner has rejected claims 26 and 47 but has not provided any reason for these rejections. Furthermore, Applicant has argued (above) that claims 26 and 47 are in fact patentable, and that absent any basis for their rejection, these

claims should be allowed. Applicant adds in this regard that Hecht does not teach or suggest anything remotely like the step of (or corresponding means for) supplanting internal key fields with corresponding descriptive fields derived from related tables.

Since claims 32 and 48, as amended, now depend from claims 26 and 47, respectively, and each contains each and every limitation of the corresponding base claim, claims 32 and 48 must be patentable if claims 26 and 47 are patentable (MPEP 608.01(n)), regardless of whether the subject matter heretofore independently claimed in claims 32 and 48 would be patentable in their respective original independent forms.

Claim 33 depends from claim 32 and contains each and every limitation of claim 32. Accordingly, as claim 32 is patentable, claim 33 is patentable as well. MPEP 608.01(n).

While the applicability of Hecht in view of Lei is rendered moot by reason of the present amendments, Applicant notes for the record that it nevertheless believes that independent claims covering row-level security based on the present disclosure have merit, notwithstanding the teachings of Hecht in combination with Lei. Applicant intends to pursue such independent claims in a continuing application, and accordingly has made the present amendments to claims 32 and 48 without prejudice.

**Objection to Claim 2**

The construction "data-modification and –manipulation transactions" means that the modifier "data" also applies to the word "manipulation". This construction is proper English and does not require amendment.

## CONCLUSION

Applicant believes that the application is in condition for allowance, and solicits allowance at the earliest opportunity.

Dated: March 14, 2005

Respectfully submitted,

Ronald Abramson
Registration No. 34,762
Attorney for Applicant

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6404