# Exhibit E

UNITED STATES PATENT AND TRADEMARK OFFICE

**BEFORE THE PATENT TRIAL AND APPEAL BOARD**

MICROSOFT CORP.
Petitioner

v.

MICHAEL PHILIP KAUFMAN
Patent Owner

U.S. Patent No. 7,885,981

*Inter Partes* Review Case No. 2017-01142

# PATENT OWNER PRELIMINARY RESPONSE

**TABLE OF CONTENTS**

**I. BACKGROUND OF THE '981 PATENT** ..... **1**

**II. CLAIM CONSTRUCTION** ..... **3**

"a user interface paradigm comprising a set of modes for interacting with a given database table, said modes comprising create, retrieve, update, and delete, and a corresponding display format for each mode" ..... 3

**III. CLAIMS 1-6 OF THE '981 PATENT ARE ENTITLED AT LEAST TO AN OCTOBER 2001 PRIORITY DATE** ..... **10**

A. Microsoft's Section 112 Argument is Insufficient to Shift the Priority Date of the Challenged Claims ..... 10

B. Microsoft's Own Arguments in this Very Petition Make Clear that the Delete "Mode" is Supported by the '981 Patent Specification ..... 13

**IV. CONCLUSION** ..... **16**

Microsoft Corp. ("Petitioner" or "Microsoft") bases its entire petition for *inter partes* review (the "Petition") on a proffered claim construction that is at variance with the applicable broadest reasonable interpretation ("BRI") standard, and, based thereon, the further erroneous argument that the challenged claims of U.S. Patent No. 7,885,981 (the "'981 Patent") are entitled only to the 2007 filing date of the '981 Patent, rather than the earlier dates of applications to which the '981 claims priority. Microsoft argues, based on its proposed construction, that the "mode[] . . . comprising . . . delete" in the challenged claims is somehow not supported by the specification of the '981 Patent. Microsoft's proposed claim construction in this IPR is muddled and confusing on its face, and is simply wrong. Further, Microsoft's priority argument (built on top of the incorrect claim construction) ignores the proper legal standard, and, in any event, is contradicted by Microsoft's arguments on the art that it applies in this very same IPR Petition.[1]

## I. BACKGROUND OF THE '981 PATENT

The original application in the family of the '981 Patent was filed on October 31, 2000, by Michael Philip Kaufman, the first named inventor and present Patent Owner ("Patent Owner" or "Kaufman").

[1] Patent Owner intends by this Preliminary Response to point out some clear shortcomings of the Petition and the reasons why the Board should not institute trial. Patent Owner does not admit the sufficiency of any grounds or issues in the Petition that are not expressly addressed herein.

The challenged claims of the ’981 Patent recite features of an automated solution for what was previously a tedious and error-prone manual process of database application creation. Given an existing database without any end user application, the claimed subject matter will automatically generate an end user application adapted for the database and equipped to perform all essential operations that the application needs to perform with the database, including operations to create, retrieve, update, and delete data in the database, while observing and enforcing the inter-table relationships defined in the database (and thus maintaining the integrity of the database when data is added, updated, or deleted).

In order to generate a client application so adapted to the database, the systems and methods that generate the application need to have detailed information about the database. This information is stored in the database "schema" (or data dictionary). The claimed systems and methods interrogate the database schema to determine structural information about the database, and use that information in automatically constructing a client application having the above-described data-manipulation capabilities.

The automatically generated client application provides a connection to the database. The user interface provided by the application includes a set of modes for interacting with a given database table, including create, retrieve, update and

delete, and a corresponding display format for each mode. The application further provides displays of the data within the database, table-by-table, in accordance with the display formats. The display formats provide mechanisms for representing, navigating, and managing data relationships across tables, for selecting among said modes, and for interacting, in accordance the selected mode, with the data in the tables that are reached by said navigation. All of this is done while observing and enforcing relational interdependencies among data across said tables.

## II. CLAIM CONSTRUCTION

**"a user interface paradigm comprising a set of modes for interacting with a given database table, said modes comprising create, retrieve, update, and delete, and a corresponding display format for each mode"**

Microsoft's entire argument on priority is premised on a requested claim construction that would fly in the face of BRI. Microsoft presents a confusing argument for the construction of this element. (Petition at 13-14.) Claim construction has been fully briefed in the related litigation, and Microsoft appears to have shifted its position for this Petition. Fundamentally, however, both here and in the district court, Microsoft is arguing for a *narrower* interpretation than would be reached in accordance with either plain and ordinary meaning or BRI, and one that should be rejected by the Board.

To start, as Kaufman has outlined in the district court briefing, and as anyone of ordinary skill in the art of working with databases is aware, Create, Retrieve, Update, and Delete are the four standard modes of data operation on a database. These are generally recognized as the four types of operations that one can perform on the data in a database. New data can be created, and existing data can be retrieved, updated, and deleted.

Microsoft is trying here to drive a sharp distinction between a delete "mode" and a delete "capability," which distinction and argument is confusing at best (and disingenuous at worst).

The broadest reasonable interpretation of the word "mode" as used in the claims is that a "mode" means literally what the claim says – *i.e.*, "mode for interacting" – in which the word "mode" has its ordinary meaning of a manner or mechanism for effecting the subject interaction. This was made clear in Kaufman's preliminary amendment that explained this claim language to the Examiner when first presented in the application for the '981 Patent: "the client application provides *operating modes* to create, retrieve, update and delete database data, and a corresponding display format for each mode." (MS1002 at 270 (emphasis added).)

The Petition, at pages 13-14, specifically requests a construction of the following claim language:

> "a user interface paradigm comprising a set of modes for interacting with a given database table, said modes comprising create, retrieve, update, and delete, and a corresponding display format for each mode"

Yet, the argument presented at pages 13-14 of the Petition as to the construction of this language never actually takes a position on how the word "mode" contained therein should be construed. There is no basis presented, therefore, to adopt any interpretation other than the plain and ordinary interpretation, as set forth above, that the word "mode" as used in the present claims means a mode or manner of operation or interaction, that is, a type of operation, that may be performed on database data.

The second area of contention concerns the claim term "corresponding." In the district court litigation, Microsoft has staked its ground, that each of the four recited modes of data operations must be implemented through a "distinct" or "separate" screen or window, adding the limiting word "distinct" (later changed by Microsoft to "separate") neither of which appears in the claims. Here, by contrast, Microsoft avoids such language in its explicit claim construction argument, only going so far as to substitute "respective" for "corresponding," without explaining what is meant by "respective," why this substitution should be made, or how "respective" might differ from "corresponding."

However, it is evident from the manner in which Microsoft seeks to *apply* its construction that it desires the Board to fill the gaps in the construction argument at pages 13-14 of the Petition so as indeed to limit the term "corresponding" to an exclusive one-to-one correspondence, in which there is one and only one "mode" implemented per "display format." (*See, e.g.*, Petition at 21, where Microsoft argues that "a POSITA would have understood that the Microsoft Access system as described in Simpson would have allowed for *separate forms* for the view, add, edit, and delete functionalities for a given database table.") See also the arguments on pages 26, 28, 35-36, 38, 41, 43-45, and 66, which are to the same effect, repeatedly arguing "separate" display forms as if it were part of the construction. Microsoft failed on pages 13-14 of its Petition to advocate for insertion of the words "separate forms" into the claims, but seeks to argue the application of its construction to the facts as if it had.

Microsoft has to go one way or the other to make its argument. Either the user interface for the claimed "delete" operation must be implemented in a display format separate (or distinct) from the implementation of "create," "retrieve," and "update," or not, in which case the screen display formats can be shared so as to support more than one of these operations. Microsoft's express claim construction argument at pages 13-14 fails to articulate the limiting variation of this

construction, and Microsoft should not be permitted to avail itself of the fruits of an argument it failed to make. [2]

In any case (and to address the contention that Microsoft failed to fully articulate), there is nothing in the BRI standard that would support reading into the claims an additional requirement that the claimed display formats must constitute "separate forms." Neither the word "corresponding," nor the word "respective" that Microsoft seeks to substitute, implies an exclusive one-to-one relationship between the specified software functionality and the implementing screen display, as would be required to support such an additional, limiting requirement.

Two simple examples illustrate this distinction. With a list of states and state capitals for the United States, each state would have only one "corresponding" capital, and each capital would have only one "corresponding" state. But in a book index, each indexed term would have one *or more* "corresponding" pages, and multiple indexed terms could appear on any single page. The book index example would be a "one-to-many" (or many-to-many) correspondence. Both examples are

[2] Microsoft should be bound to its actual Claim Construction argument on Page 13-14 of the Petition, which argument lacks any statement as to what Microsoft means by the inserted term "respective." This construction would be insufficient to support Microsoft's priority argument (on which this entire Petition depends). Microsoft is seeking to cloak its actual claim construction request with the guise of plausibility (by not directly seeking a limiting Claim Construction), yet at the same time to apply the construction in a manner that assumes the insertion of a further, unstated claim limitation – also known as having one's cake and eating it too.

within the scope of what is normally understood as "corresponding" or "correspondence."

Simply put, there is nothing in the claim language that implies that the word "corresponding," which is normally understood as comprising both one-to-one as well as one-to-many relationships, *must* be limited in this case to a one-to-one correspondence. There is surely no basis under BRI, under either the literal claim language *per se*, or as read in light of the specification, to *narrow* the construction of this term so as to limit it to a one-to-one correspondence. The specification makes the proper interpretation even more clear, as the preferred embodiment and only disclosed implementation of this feature would put the "delete" and "edit" controls on the same display. ('981 Patent at 5:63-6:3 (delete may be "incorporated … by adding … another pushbutton within the Edit-mode display").) "Delete" still has a "corresponding" display format, which according to the example in the specification can be shared with the "edit" mode.[3]

---

[3] Requiring each mode to have a distinct display, as Microsoft urges, would exclude the preferred embodiment from the scope of the claims, which runs counter to a canon of claim construction. "[A] claim construction that excludes a preferred embodiment . . . is rarely, if ever correct and would require highly persuasive evidentiary support." *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1347 (Fed. Cir. 2014) (*quoting Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003)); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

The Board should also consider the practical implication of a "separate form" requirement for a delete mode display. It would be a user interface element that performed no database operation other than delete – without even a view of the data that would be seen in a "retrieve" or "edit" mode. Such a limiting interpretation doesn't make sense in the context of a real-world application. In user interface design, a Delete button, for example, is typically shown in-line with a display of various data that a user can delete.

In sum, the construction of the subject claim language that both makes sense and is in accordance with BRI is that a "mode" as used therein means simply a type of operation that may be performed on database data, and "corresponding display format" simply means a user interface display format that incorporates the specified mode.

Under the correct BRI construction, as set forth in the preceding paragraph, the present Petition can only be denied. The '981 Patent specification expressly discloses at 5:63-6:3 that "DELETE capability" – synonymous with delete "mode" as properly construed – may be "incorporated … simply by adding … another pushbutton within the Edit-mode display" – a "corresponding display format" within the proper construction. Hence, there is no daylight whatsoever between the proper claim construction and the disclosure of the specification, and thus the entire Petition collapses on this one point.

## III. CLAIMS 1-6 OF THE '981 PATENT ARE ENTITLED AT LEAST TO AN OCTOBER 2001 PRIORITY DATE

### A. Microsoft's Section 112 Argument is Insufficient to Shift the Priority Date of the Challenged Claims

To even apply the art in the current Petition, Microsoft must first succeed in pushing the '981 Patent's priority date to 2007. Microsoft devotes less than a page and a half to the argument, and fails to even cite – let alone apply – the applicable legal standard under 35 U.S.C. §§ 112; 120.

Microsoft's argument is difficult to parse. As noted, Microsoft's argument depends entirely on a proposed claim construction. If that construction is rejected, then the specification by its literal disclosure clearly supports the claims and the Board need not consider Microsoft's arguments any further.

Based on its asserted (yet unspecified) construction of delete "mode" (as somehow distinct from the specification's disclosure of a delete database operation, and of a definite manner in which such operation may be implemented) Microsoft references "the original application family" (Petition at 10) as not containing the delete "mode." To the extent that Microsoft is trying to allege a lack of delete-related disclosure in the original application, the '981 Patent is a continuation of U.S. Patent No. 7,318,066, which is a continuation of International Application No. PCT/US01/42867 with a priority date of Oct. 31, 2001, which

contains delete-related disclosure that is identical to that in the ’981 Patent specification.

> Note that, although not shown in the reference implementation, DELETE capability is also readily incorporated—as either (or both) true record-removal from the underlying table, and/or record “flagging” for UI suppression (with continued underlying-table record retention)—simply by adding (according to the user's access rights, potentially) another pushbutton within the Edit-mode display.

International Patent Publication No. WO 02/059793 at 7:11-15; ’981 Patent at 5:63-6:3. The October 31, 2001 filing date of the PCT application in the ’981 Patent’s priority chain predates both of Microsoft’s primary references asserted in Grounds 1 and 2 of the Petition.

To the extent that Microsoft is trying to argue that the above-quoted disclosure of the’981 Patent specification does not support the delete mode in the claims of the’981 Patent (*i.e.*, that the delete mode is “new matter”), then Microsoft fails to even cite the proper standard for what constitutes new matter.

New matter is matter that is not supported under the requirements of (pre-AIA) 35 U.S.C. § 112 ¶ 1. *In re Rasmussen,* 650 F.2d 1212, 1214 (C.C.P.A. 1981). The Section 112 standard looks at the disclosure for written description and

enablement from the perspective of "any person skilled in the art to which [the specification] pertains." (pre-AIA) 35 U.S.C. § 112 ¶ 1.[4]

Microsoft conclusorily states that the delete mode in the claims of the '981 Patent is new matter as of the filing date of the application for the '981 Patent. (Petition at 10.) There is no mention of Section 112 or (importantly) the perspective of a person having ordinary skill in the art. As discussed above in connection with claim construction, and as is clear to anybody who has worked with database applications, delete is one of the modes of operation on a database (in addition to create, retrieve, and update). The above disclosure from the '981 Patent (5:63-6:3) and dating back in the '981 Patent priority chain to October of 2001, shows that the inventors possessed and enabled the use of delete in combination with the other claimed subject matter.

Patent Owner asserts that even if the Board were to conclude that the claim terms "mode" and "corresponding" require a separate, dedicated, and distinct display for each "mode," the specification enables such a claim, because the Petition fails to make the case and carry its burden that a POSITA would not recognize from the disclosure in the specification that the inventor was in possession of the claimed subject matter. Patent Owner asserts that a mere passing

---

[4] Of course, "a claim may be broader than the specific embodiment disclosed in a specification." *Rasmussen,* 650 F.2d at 1215.

conclusory assertion in this regard, as found in the Petition at page 10, is insufficient to carry this burden – even assuming that Microsoft's proffered claim construction is correct.

Microsoft has the ultimate, statutory burden to prove each "proposition of unpatentability" in an IPR. 35 U.S.C. § 316(e). Microsoft's conclusory argument in a page and a half of the petition falls far short of meeting this burden on the priority date.[5]

### B. Microsoft's Own Arguments in this Very Petition Make Clear that the Delete "Mode" is Supported by the '981 Patent Specification

Microsoft argues that Kesler discloses a "'Delete' menu option within the main screen of the user interface." (Petition at 65.) Microsoft argues that this is "precisely [the] configuration" disclosed in the '981 Patent, which "discusses a 'Delete' pushbutton within the 'Edit-mode display.'" (*Id.*) To the extent that Microsoft is arguing that this disclosure in Kesler, which Microsoft argues "precisely" matches the disclosure of the '981 Patent, meets the delete mode claim

---

[5] In view of Microsoft's going (at least) to the word limit in this 95-page Petition, Microsoft should not be entitled to buttress any failure to make its case in the Petition by reference to an expert declaration, which would be inappropriate incorporation by reference. In any case, the expert declaration herein is similarly conclusory (*see* MS1003, ¶ 35) and adds nothing of substance to Microsoft's "new matter" argument.

limitation under Microsoft's proposed construction, then the '981 Patent's disclosure must necessarily support the claim element.

Microsoft further argues that "Kesler provides a separate delete dialog for the delete mode display." (*Id.*) This "separate delete dialog" is nothing more than a dialog box requesting that the user confirm that (s)he would like to delete the records chosen for deletion. It is literally a dialog that asks the user "Delete the selected record(s)?" with buttons for yes and no. (*Id.* including MS1006, FIG. 30.) To be clear, Microsoft is literally arguing that a delete confirmation dialog is all it takes to meet a "separate forms" claim construction position. However, such a confirmation upon a delete has been a standard user interface element going back decades in user interface design. No credible expert could opine that a delete confirmation dialog box was not in Kaufman's possession prior to, *e.g.*, October 31, 2001.[6]

The fact that Kaufman did not literally include text in the '981 Patent disclosure that the user interface could display a confirmation dialog box upon delete is immaterial. Patent Owner respectfully submits that the presence or

---

[6] Enablement of the subject claims is also clear. Indeed, Microsoft makes exactly the argument that Kesler enables Delete "mode" by its disclosure of an edit form with a Delete menu command, the same as disclosed by the edit form with a delete button in the '981 Patent. (Petition at 65.)

absence of something as trivial as a delete confirmation is far too slim a reed on which to premise a finding of a failure to comply with Section 112.

Microsoft also argues that Simpson "forms that display information from one or more tables and allow users to edit data and create new records" with "toolbars [that] can be customized to limit users' access to certain functionality and can include buttons that allow users to filter, add, or delete records." (Petition at 20-21.) Microsoft then argues that these combined screens, displaying multiple of the claimed modes, render the claimed modes obvious. If, under Microsoft's proposed construction, combined modes on a single screen renders modes on separate screens obvious, then this means that (even under Microsoft's proposed construction), the '981 Patent disclosure's combination of Edit and Delete on a single screen enables the claimed Delete mode.

Similarly, as to Simpson, Microsoft argues that Delete "mode" is obvious based on Microsoft Access's inclusion of a Delete control in an Edit mode display – again the same as disclosed by the '981 Patent. (Petition at 20-21.) This is not remarkable, as anyone even casually familiar with database applications would recognize that there is no practical need for an exclusive, dedicated Delete mode display in such an application. Once again, it is apparent that the disconnect here is in Microsoft's limiting and unwarranted claim construction.

Yet, even under Microsoft's proposed claim construction, pursuant to Microsoft's arguments, the Delete mode is supported by adequate written description and enabled by the '981 Patent disclosure, which disclosure dates back to at least October 31, 2001.

Both Grounds in the Petition assert art that post-dates this October 31, 2001 date of disclosure in the '981 Patent family. Microsoft argues that Simpson, applied in Ground 1, was available as of 2003 (Petition at 4-5). Kesler, applied in Ground 2, has a priority date of Dec. 28, 2001. (MS1006.) Since both Grounds of the Petition use art that post-dates the disclosure in question, which supports the challenged claims, both Grounds must fail.

Therefore, Microsoft is unlikely to invalidate at least one claim of the '981 Patent and institution should be denied.

## IV. Conclusion

Because Microsoft has failed to show that it is reasonably likely to invalidate at least one claim in the '981 Patent, the Board should deny the Petition and deny institution of *inter partes* review of the '981 Patent.

Dated: July 6, 2017

Respectfully submitted,

/Ronald Abramson/
Ronald Abramson
(Attorney for Patent Owner)
Reg. No. 34,762
212-822-0163

CERTIFICATION UNDER 37 CFR § 42.24(d)

Under the provisions of 37 CFR § 42.24(d), the undersigned hereby certifies that the word count for the foregoing Patent Owner Preliminary Response totals 4,039, which is less than the 14,000 allowed under 37 CFR §§ 42.24(a)(1)(i); 42.24(b)(1).

Dated: July 6, 2017

/Ronald Abramson/
Ronald Abramson
(Attorney for Patent Owner)
Reg. No. 34,762
212-822-0163

CERTIFICATE OF SERVICE

Pursuant to 37 CFR § 42.6(e), the undersigned certifies that on July 6, 2017, a complete and entire copy of this Patent Owner Preliminary Response was provided to the Petitioner by filing through the PTAB E2E System and via email to IPR18277-0069IP2@fr.com, PTABInbound@fr.com, hawkins@fr.com, leung@fr.com, and wolff@fr.com, as authorized in Petitioner's mandatory notices.

Dated: July 6, 2017

/Ronald Abramson/
Ronald Abramson
(Attorney for Patent Owner)
Reg. No. 34,762
212-822-0163