UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

MICHAEL PHILIP KAUFMAN,

Plaintiff,

v.

ZOHO TECHNOLOGIES CORPORATION,

Defendant.

Civil Action No. 25-cv-01082-RP

**PLAINTIFF'S SUR-REPLY CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

1. Preambles ........ 1

2. “automatic(ally)” / “automatically generating” / “automatically construct” ........ 1

3. “data model” ........ 5

4. “scan[ning] said database” ........ 6

5. “apply[ing] a body of rules to determine the table structures, constraints and relationships of said data model” ........ 8

6. “construct a corresponding client application” ........ 9

# TABLE OF AUTHORITIES

## Cases

*Harris Corp. v. Fed. Exp. Corp.*, 502 F. App'x 957 (Fed. Cir. 2013) ........................................8

*Kaufman v. Microsoft Corp.*, 34 F.4th 1360 (Fed. Cir. 2022) ...................................................3

*Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)......................................7

*Mars Inc. v. H.J. Heinz Co.*, 377 F.3d 1369 (Fed. Cir. 2004) ...................................................2

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ............................................2

*Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012)...........................1, 6

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010)................................7

Kaufman stands by his arguments in his responsive claim construction brief. Zoho makes the classic mistake of importing limitations from the specification into the claims and ignoring the standards of claim construction that require lexicography or clear disavowal of claim scope to redefine the words of a claim. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (emphasizing the "clear and unmistakable" requirements for disclaimer). Zoho takes many disparate statements and tries to apply them all to the language of the claims. As discussed herein, some of those statements have been misinterpreted by Zoho and others are not definitional of the words in the claims.

**1. Preambles**

The parties agree that there are limiting recitals on the preambles.

**2. "automatic(ally)" / "automatically generating" / "automatically construct"**

The parties disagree on the construction of the "automatically" terms. Simply put, "automatic(ally)" in the context of these claims means that *the recited steps of the Asserted Claims* are each done automatically. No separate developer input is required for the recited steps. Zoho argues that its language is clearer (Defendant Zoho Technologies Corporation's Reply Claim Construction Brief (D.I. 45) (hereinafter "Zoho Reply Br.") at 2), but Zoho's proposed exclusions are too broad, and thus overly limiting, and well beyond the requirements of the Asserted Claims.

The disclosures Zoho points to in the specification to support these arguments (Zoho Reply Br. at 2-3) distinguish prior systems that required developer input for the recited steps. The words of the claims themselves govern here. The claims recite in the preamble, *e.g.*, "automatically generating an end-user interface..." which thus applies to the recited steps of the claim, comprising providing an output stream, causing the server to scan the database, and using the representations to construct a corresponding client application. *See* '981 Patent, claim 1.

Zoho seeks to go beyond the recited steps to preclude any other developer input, custom programming, or user intervention whatsoever. Zoho's proposal would require automatically carrying out the recited steps *and any other action that relates in any way to the generation of the user interface*. Zoho Reply Br. at 2-4. This is not how the claims are written, and Zoho's construction therefore goes beyond the limitations of the claims themselves. Zoho points to a statement in the "field of the invention" section of the specification. Zoho Reply Br. at 3 (quoting '981 patent at 2:23–27). This is about the field, and not definitional of the "invention" as a whole, and certainly does not supplant the recited language of the claims themselves. This is not definitional or "an intentional disclaimer, or disavowal, of claim scope." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (*en banc*). The same is true for the recited object of the invention. Zoho Reply Br. at 3 (quoting '981 Patent, 3:8–12).

The methods and systems covered are the recited steps themselves, and Kaufman does not need to disclose all other possible developer input or user intervention that might be used in *addition* to the recited steps, as argued by Zoho (Zoho Reply Br. at 3-4). All Asserted Claims recite "comprising," a participle linking the claim preamble and its body, which patent law consistently regards as open-ended in scope. *See, e.g.*, *Mars Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004) ("[L]ike the term 'comprising,' the terms 'containing' and 'mixture' are open-ended."). The claimed systems and methods are the recited steps, which are fully disclosed in the specification.

Zoho repeatedly misinterprets statements in the specification that relate to the Schemalive Reference Implementation disclosed therein – the complete, functional source code contained in the '981 Patent specification itself and, by reference, in the other Asserted Patents' specifications. Zoho cites an incomplete sentence, arguing that the "connection variables are '[t]he only

customization that should be required.'" Zoho Reply Br. at 3-4. The end of that sentence from the '981 Patent specification confirms that these are the only customization that is required "to run the SRI [the Schemalive Reference Implementation] in a particular environment." '981 Patent, 346:22-25. This is not definitional for the claims themselves, but instructions on running the disclosed code.

Zoho references arguments made to the Patent Office about the source code (Zoho Reply Br. at 4). These statements concern a "written description" rejection for newly added dependent claims, which is totally irrelevant to the issue at hand. Furthermore, the claim language there at issue was that the automatic process does not perform code generation. Neither that claim language or the argument to the Examiner made any statement whatsoever about custom programming.

Zoho attempts to distinguish the prior litigation (Zoho Reply Br. at 5-6), but Kaufman's definition is absolutely the definition that was used in the Microsoft litigation that went all the way through successful jury trial and Federal Circuit appeal. The word "automatically" was not specifically "construed" by District Judge Hellerstein, and Kaufman never argued that Judge Hellerstein construed that term. Rather, Kaufman specifically argued that Judge Hellerstein "adopted" this construction from the parties. Plaintiff's Responsive Claim Construction Brief (D.I. 43) (hereinafter "Kaufman Br.") at 6. It is not in Judge Hellerstein's claim construction order itself but was a claim construction issue settled on the record as the trial approached. Judge Hellerstein had an opportunity to review and consider this proposal and adopted it without changes. *See* D.I. 43-2.

The Federal Circuit directly addressed the meaning of "automatically generating" in its decision, though it is true that it found Microsoft raised this for the first time on appeal. *Kaufman*

*v. Microsoft Corp.*, 34 F.4th 1360, 1371 (Fed. Cir. 2022). The Federal Circuit specifically stated that only the recited steps in the claims need to be performed automatically, "[a]nd the fact that the claims are 'comprising' claims does not suggest that all other, non-listed actions must be performed automatically." *Id.* It would be reversible error for this Court to find otherwise, as Zoho argues.

On the '801 Patent, Kaufman's prior argument (Zoho Reply Br. at 7-8) is exactly what Kaufman argues here. The recited steps are performed automatically. As quoted by Zoho, "A processor (not a person) identifies a foreign key, locates a row in the foreign table, selects a value therefrom, and derives a description of the foreign-table row. This is not done manually, but automatically." Zoho Reply Br. at 7-8 (quoting Zoho Reply Br., Ex. B (IPR Arguments)). These are the steps recited in the '801 Patent claims. *See* '801 Patent, 36:30-53 (claim 1). They are carried out automatically. This does not require that additional steps beyond those recited must be carried out automatically as well.

Zoho cites to IPR arguments – for the first time on reply – that pertain to a prior art reference, Gardner (U.S. Pat. No. 6,058,391). Zoho Reply Br. at 8 (citing to D.I. 45-2). Kaufman, in that case, distinguished Gardner on multiple grounds, but particularly because Gardner required an "administrator" (Gardner's own term, not Kaufman's) to manually enter extensive database directives necessary for its UI generation code to function. The administrator manually added a view, gave it a name, selected the table, selected the primary key ID, reviewed each field to specify whether it should be included, and specified particular information about the view, including a field's "lookup status," among other manual steps. *See* D.I. 45-2 at 10-15. In the arguments in question, Kaufman was distinguishing Gardner's "administrator" and all of the specified manual steps that were required to generate aspects of a user interface. Kaufman notes

first that the "administrator" in Gardner is performing steps related to building the end-user interface for working with a relational database, such that Gardner's administrator could qualify as a "developer" under Kaufman's disclosure. Kaufman's prior IPR argument likewise addressed disclosure of an administrator who manually set up all of these attributes in advance, so that a processor would not need to determine and perform the steps later to generate the user interface elements in question. There is no contradiction here, whereby such an administrator's actions would fall within the claims of the '801 Patent under Kaufman's construction, as argued by Zoho. An "administrator" performing all of the specified steps in Gardner eliminates the steps being performed by a processor and automatically, as recited in the claims of the '801 Patent. That was the distinction in the IPR argument. Zoho's assertion that "[a]n administrator is not a developer" (Zoho Reply Br. at 8) is not in any way a position that Kaufman argued to the PTAB, and is an overstatement totally removed from and inconsistent with any context that was being argued with regard to Gardner in the prior IPR.

**3. "data model"**

As argued by Kaufman in his prior brief, "data model" is defined within the claims of the '981 and '220 Patents themselves. The elements of the data model are laid out in these claims, and thus define what the data model is. Kaufman Br. at 10-11. Zoho is trying to import requirements from the specification in a two-step process. One of its references to the specification ties "data model" to the back-end, then Zoho takes another leap with a separate reference to tie "back-end" to "RDBMS." Zoho Reply Br. at 8. But the relied-upon disclosure for Zoho's second logical leap (to the "RDBMS") states that "…such systems are *generally composed of* a 'back-end' relational database management system (RDBMS)." Zoho Reply Br. at 8 (quoting '981 Patent, 2:33-35) (emphasis added). This is, by its own words, merely an *example* of a back-end. Though these systems may generally include certain features, this language is not

definitional as to what a "back-end" must be. Zoho also argues that the claims themselves tie the data model to the RDBMS. Zoho Reply Br. at 9-10. As Kaufman previously argued, this is incorrect. *See* Kaufman Br. at 11-12. (some of the Asserted Claims "do not recite 'RDBMS' at all" and Zoho is not properly interpreting words such as "stored in" and "defined in" in the Asserted Claims that do recite "DBMS").

Zoho then cites arguments made to the Board in prior briefing (Zoho Reply Br. at 10-11), none of which constitute clear disavowal of claim scope or are definitional of the term "data model." Kaufman never told the Board that the "invention" contains a "data model" used by a "back-end RDBMS." Zoho picks and chooses statements from prior briefing and argues that they characterize the "invention" as a whole. This is improper. For these statements to be limiting, they must be clear disavowals of claim scope. *See Thorner*, 669 F.3d at 1365 (emphasizing the "clear and unmistakable" requirements for disclaimer). Zoho never even tries to address this standard, and its arguments about Kaufman's prior briefing therefore fail.

**4. "scan[ning] said database"**

As argued in Kaufman's prior brief, this term should be afforded its plain and ordinary meaning. Kaufman Br. at 12-13. A person of skill in the art would understand the term as it is written and nothing in the specification or the file history redefines the term as Zoho would have the Court do. The data model is the data model of the database to be connected to by the constructed end-user interface. Zoho again points to a statement in the specification that the back-end generally includes an RDBMS. *See* Zoho Reply Br. at 11 (referencing Zoho's argument for "data model" and arguing "the only data model recited in the specification or the claims is the data model of the relational database that is stored in and used by an RDBMS"). The claimed data model, however, is not necessarily the data model *of* the RDBMS itself, but rather a data

model that is "stored in" the RDBMS in the quoted example. The reference to an RDBMS is thus not definitional or limiting of "data model." [1]

Zoho also seeks to carve out a broad exclusion based on "foreknowledge." As Kaufman argued in his prior brief, the specification also clearly discloses re-scanning, which of course is done after a prior scan. Kaufman Br. at 13. Zoho tries to argue that the re-scan is performed due to lack of knowledge and that scanning cannot have any prior knowledge. Zoho Reply Br. at 11-12. This is all attorney argument, and this back and forth shows why the Court should not limit the claims as Zoho argues. There is no explicit definition that requires a lack of foreknowledge, and no clear disavowal of claim scope that requires this lack of knowledge.

Zoho again seeks to rely on prior IPR arguments. It does not cite to actual IPR arguments about "foreknowledge," however, citing simply to a *heading* in a Kaufman IPR brief. Zoho Reply Br. at 12-13 (citing heading from D.I. 42-6 at 26). The actual, underlying argument from the IPR makes clear that the Yeager reference's operation joined two tables and did "not teach or suggest any way of doing this as a result of scanning the database schema." D.I. 46-2 at 26-27. The point was that this one operation was based on the assumption of having specific tables with specific characteristics in specific subdivisions ("levels") of the data structure, and that the processor therefore did not have to determine which tables to operate on. D.I. 42-6 at 28-29. These arguments absolutely do not require a lack of any knowledge whatsoever in all cases, as

---

[1] Additionally, Zoho is completely wrong on the law, even if the argument about the specification disclosure was accurate, in that even if there were only a single disclosure in the specification, that is not limiting. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010) ("[W]hen the specification uses a single embodiment to enable the claims, courts should not limit the broader claim language to that embodiment 'unless the patentee has demonstrated a clear intention to limit the claim scope using "words or expressions of manifest execution or restriction."'") (quoting *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 905 (Fed. Cir. 2004)).

Zoho's claim construction would require.[2] Certainly, these prior arguments do not rise to the level of clear disavowal of claim scope.

This term should be given its plain and ordinary meaning.

**5. "apply[ing] a body of rules to determine the table structures, constraints and relationships of said data model"**

The term "apply[ing] a body of rules to determine the table structures, constraints and relationships of said data model" is clear from the claim language itself and requires no construction. Zoho repeats its argument based on *Harris* (Zoho Reply Br. at 13) and ignores the fact that the "data set" in question in *Harris* came from the step "generating aircraft data representative of the *continuously monitored* aircraft flight performance *during an entire flight of the aircraft from at least take-off to landing*." *Harris Corp. v. Fed. Exp. Corp.*, 502 F. App'x 957, 962-63 (Fed. Cir. 2013) (emphasis added). There is no such all-encompassing language in the Asserted Claims. As an example, there could be tables or attributes that the end-users are not supposed to see, for business reasons, as the specification contemplates. *See e.g.*,'981 Patent, 11:7-13. Zoho's construction would exclude such embodiments.

Zoho also cites various specification disclosures and an argument from IPR briefing. Zoho Reply Br. at 13-14. None of this is definitional of this claim term or a clear disavowal of claim scope, and Zoho does not even attempt to make an argument that any of these disclosures meet the legal standard for either lexicography or clear disavowal of claim scope.

---

[2] Kaufman notes that this is emblematic of Zoho's arguments throughout the claim construction briefing, taking a quote out of context and attempting to argue that a word or phrase in the quote is definitional of a claim term.

**6. "construct a corresponding client application"**

The words "construct a corresponding client application" speak for themselves and should not be further altered or limited. Zoho again cites to the specification sentence about intermediate source code (Zoho Reply Br. at 15), which, as discussed above in relation to automatically, is not relevant in the slightest (as it did not address custom programming), let alone definitional of "automatic[ally]" or "construct a corresponding client application." This term should be given its plain and ordinary meaning.

Date: October 22, 2026

Respectfully submitted,

*/s/ Ronald Abramson*

Ronald Abramson (*pro hac vice*)
New York Bar No. 1457126
ron.abramson@listonabramson.com
David G. Liston (*pro hac vice*)
New York Bar No. 2642049
david.liston@listonabramson.com
Ari J. Jaffess (*pro hac vice*)
New York Bar No. 4621397
ari.jaffess@listonabramson.com
Alex G. Patchen (*pro hac vice*)
New York Bar No. 4246021
alex.patchen@listonabramson.com
M. Michael Lewis (*pro hac vice*)
New York Bar No. 4467007
michael.lewis@listonabramson.com
Gina K. Kim
Texas Bar No. 24097937
gina.kim@listonabramson.com
**Liston Abramson LLP**
The Chrysler Building
405 Lexington Avenue, 46th Floor
New York, NY 10174
212-257-1630

Wasif H. Qureshi
Texas Bar No. 24048155
wqureshi@jw.com
**Jackson Walker LLP**
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4521

**COUNSEL FOR PLAINTIFF MICHAEL PHILIP KAUFMAN**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served on the counsel of record via the CM/ECF system on October 22, 2026.

Dated: October 22, 2026

By: *_/s/ Ronald Abramson_*
Ronald Abramson